ANN DALY MEHEGAN HARRIS v. NACHAMSON DEPARTMENT STORES COMPANY, a corporation.

(Filed 20 November, 1957)

1. **Negligence § 4f—**

In order for an invitee to recover from the owner or lessor of a building for injuries resulting from a fall on the premises, plaintiff must show some breach of duty owing to her by the owner or lessor.

2. **Same—**

The fact that the tread of the bottom step of a stairway extends one inch beyond the end of the handrail provided for those using the stairs does not show negligent construction or maintenance of such rail.

3. **Same—**

Where the evidence discloses that lessor provided lights with convenient switches at the top and bottom of a stairway for use of employees of lessees, without evidence of any defect or inadequacy of the lighting facilities, an employee falling on the stairs after failing to use the switch to turn on the light does not establish negligence on the part of the lessor in this respect.

4. **Same—**

A lessor contracting to provide janitorial services for halls and stairs is under duty to exercise reasonable diligence to keep these facilities in a reasonably safe condition, but is not an insurer and is liable only for dangerous conditions known or which should have been known by it and which are unknown or not to be anticipated by an invitee.

5. **Same—Evidence held not to disclose liability on part of lessor for failure to provide adequate janitorial service.**

Lessor was under contractual duty to provide janitorial service for the halls and stairways of the building. Plaintiff, an invitee, slipped and fell on mud and water upon the steps. The evidence tended to show that plaintiff had been familiar with the premises for sometime, knew that mud and water were necessarily tracked onto the stairs in wet weather, that plaintiff failed to turn on lights in the stairwell although light switches were conveniently maintained for her use, and also that another dry stairway was available for plaintiff's use. *Held:* Nonsuit was proper since the evidence discloses that plaintiff had actual knowledge of the conditions superior to any actual or imputed knowledge of defendant lessor, and further that defendant could not reasonably foresee that plaintiff would choose the less safe stairway.

APPEAL by plaintiff from *Moore, (Clifton L.), J.,* April Term 1957 of LENOIR.

Plaintiff seeks compensation for personal injuries sustained in a fall on a staircase of a building in possession of defendant. The negligence charged to defendant is the failure to have and maintain adequate handrails on the side of the stair, failure to properly light, and failure to keep and maintain the stair reasonably free from mud, water, slime, or other substances apt to cause those using it to slip and fall.

Defendant denied all allegations of negligence and as a further defense pleaded contributory negligence.

The evidence, viewed in the light most favorable to plaintiff, tends to establish these facts: Defendant leases from the owner a two-story brick building situate on the south side of North and west side of Queen Street in Kinston. The lower floor is subleased to H. L. Green Company and is used as a mercantile establishment. Green Company also subleases a portion of the second floor for offices. Other lessees of offices on the second floor are the Red Cross, a dentist, an insurance agency, and a beauty shop. Plaintiff was, at the time of her injury, an employee of the Red Cross, whose offices were at the southeast corner of the building. She had been so employed for approximately eighteen months. At the time of her injury and during the period of her employment the offices of her employer were in the same place.

Access from the Red Cross offices to the street was provided by either of two stairways. To go from the Red Cross office to the ground, one would travel north along a hallway approximately half the width of the building on Queen Street. He would then turn to the west, his left, and proceed approximately half the length of the building on North Street. At this point there is a stairway leading directly to North Street. The offices are between the exterior of the building and the hallway.

If one preferred not to use the stairway leading directly to North Street, he could continue along the corridor several feet, then turn south along another hall or corridor to a stair which leads into Green Company's store. He could pass from the store directly to Queen Street. The store was open from 8:00 in the morning until 5:30 in the afternoon. Access to Queen Street through the store and stairway was available whenever the store was open.

In the hall just outside of the Red Cross office is an electric switch which can be used to turn on the lights in the hall. On the hall wall at the head of the stairway leading to North Street is another electric switch to turn on hall lights at that point. On the hall wall and just a few feet beyond the head of the stair is a

switch to turn on the lights in the stairwell. At the bottom and west side of the stairs is another switch to operate the lights for the stairs.

The sidewalks along Queen and North Streets are paved. At the North Street entrance, there is a door with glass in the top portion. This door swings in and to the left, and when fully open just clears the bottom step. There is a railing on each side of the stair fastened to the wall by brackets. The ends of these rails are flush with the walls on the second floor but on the ground they lack about an inch of extending the full width of the tread of the bottom step. The ends were not marked with knobs or other devices to indicate the end of the rail to one relying solely on his sense of touch.

As a part of its rental contracts with tenants of the second floor, defendant agreed to provide access by means of the two stairways and to furnish heat, electricity, water, and janitorial services for the offices, janitorial services for the corridors and stairways and lights for the stairs and corridors through the fixtures then existing, and to maintain the same in the condition existing at the time of its lease.

It was cloudy with intermittent rain on 6 February 1956. At 5:13 p.m. on that date plaintiff left the office of her employer. As her fellow employee had left the office a few minutes earlier, she switched off the office lights before closing the office door. It was dusk, but there was sufficient light in the hallway for her to see to walk. No lights were burning in the hall nor on the stairs leading to North Street. Plaintiff proceeded along the hall to the North Street stairway, and, taking hold of the railing on her right side, proceeded to descend without having switched on the stair lights. When she reached the third step from the bottom, her foot slipped. She tried to support herself by the railing, but her hand slipped off the end of the railing and she fell and sustained serious injuries. When she got up and opened the door at the street entrance, she "saw slimy mud, it looked like it was slick, too; there was more on the third step; there was some on all three. That mud showed that it had been brought in by muddy feet. The steps were wet and the mud was wet. As I came down the steps, I was not able to see well enough to see anything that was on the steps; I just had hold of the handrail and I knew I was perfectly safe until my foot slipped." She also testified: "On rainy days it was impossible to go up and down the steps without leaving some muddy tracks. There was no foot mat or anything at the bottom of the steps and it was impossible not to carry some mud up and down the steps, but the maid we had tried her best to keep it the best she could but she had so many duties that always she could not look after that stairway."

She testified she did not know where the water came from: ". . . it could have come from umbrellas, dripping rain coats or anything . . ." She noticed this condition nearly every time it rained.

There were two lights in the stairwell, one near the upper portion of the stair, the other near the lower portion. When the lights were burning the stairways were adequately illuminated.

At the conclusion of plaintiff's evidence, defendant's motion for nonsuit was allowed and plaintiff appealed.

*Jones, Reed & Griffin for plaintiff appellant.*
*Wallace & Wallace for defendant appellee.*

RODMAN, J. Plaintiff, to recover, must predicate her right of action on some breach of duty owing to her as an employee or invitee of Red Cross. *Jordan v. Miller,* 179 N.C. 73, 101 S.E. 550. Her asserted right to recover is particularized in three respects: (1) failure to provide adequate handrails along the sides of the stairs; (2) failure to provide adequate lights; and (3) failure to provide adequate janitorial service.

The rental contract imposed no duty to provide rails different from those then in use. There is no suggestion of failure to properly maintain the then existing rails. The fact that the tread of the bottom step extended one inch beyond the end of the rail is not evidence of negligent construction or maintenance. Plaintiff failed to establish her first asserted breach of duty. *Carter v. Realty Co.,* 223 N.C. 188, 25 S.E. 2d 553.

Defendant was under a contractual obligation to maintain the lighting fixtures so that the corridor and stairs could be adequately lighted. There is no evidence which in any manner suggests any defect in fixtures or lack of capacity to properly light the corridor and stair if the existing facilities were put to use by pressing a switch. Defendant was under no obligation to do more than furnish the fixtures. It was not obligated to provide someone to turn the lights off and on to meet plaintiff's needs. Plaintiff failed to establish her second asserted breach of duty.

The rental contract imposed on defendant a duty to provide janitorial services for the halls and stairs. This did not make defendant an insurer. It only imposed on defendant the duty of exercising reasonable diligence in keeping these facilities in a reasonably safe condition. *Copeland v. Phthisic,* 245 N.C. 580, 96 S.E. 2d 697; *Lee v. Green & Co.,* 236 N.C. 83, 72 S.E. 2d 33; *Barnes v. Hotel Corp.,* 229 N.C. 730, 51 S.E. 2d 180; *Pratt v. Tea Co.,* 218 N.C. 732, 12 S.E. 2d 242.

The law imposes liability on the owner of property for injuries sustained by an invitee which are caused by dangerous

conditions known, or which should have been known, by the property owner but are unknown and not to be anticipated by the invitee. *Copeland v. Phthisic, supra; Hughes v. Enterprises,* 245 N.C. 131, 95 S.E. 2d 577; *Revis v. Orr,* 234 N.C. 158, 66 S.E. 2d 652; 38 Am. Jur. 757; note 25 A.L.R. 1294.

Here plaintiff's evidence discloses her actual knowledge of conditions superior to any actual or imputed knowledge of defendant. She knew that it was or had been raining. She knew that she might find mud or water on the steps under then existing conditions. She knew how much light she had and how much was needed for a safe descent to the street. She knew that additional light, if needed, could be had by the touch of a button. She knew of the other stairway which would not have mud or water and which would safely carry her to her destination. These facilities were all available and provided by defendant. Defendant could not reasonably foresee that plaintiff would choose a way that she now says was unsafe.

Plaintiff cannot free herself from responsibility for her injury. *Hedrick v. Akers,* 244 N.C. 274, 93 S.E. 2d 160.

Affirmed.